UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KEITH V. KUM,

      Plaintiff,

  -against-

JO ANNE B. BARNHART[1],
COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
-------------------------------------------------------x

**OPINION & ORDER**
06-CV-2773

**DORA L. IRIZARRY, U.S. District Judge:**

  Plaintiff Keith V. Kum ("Plaintiff") filed an application for disability insurance benefits under the Social Security Act (the "Act") on December 31, 2002. (A.R. 18-21).[2] Currently before the court is the unopposed Motion of the Commissioner of the Social Security Administration ("Commissioner") for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).[3] For the reasons set forth below, defendant's motion is denied, and the case is remanded to the Administrative Law Judge ("ALJ") for further proceedings to determine Plaintiff's

---

  [1] Pursuant to Fed. R. Civ. P. 25(d), Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.

  [2] References to "A. R." are to the Administrative Record filed with this court on September 28, 2006.

  [3] In January 2007, the court was notified by Defendant that Plaintiff's counsel, Michael Barnas, passed away. (ECF Docket No. 9). The briefing schedule was revised to allow Plaintiff to find new counsel and file an opposition. (ECF Docket No. 10). On February 16, 2007, Plaintiff wrote the court to request 60 more days to find new counsel and file a reply. (ECF Docket No. 11). The briefing schedule was revised again and Plaintiff was given until March 28, 2007, to find new counsel and file an opposition. (ECF Docket No. 12). Since that time, Plaintiff has not submitted any opposition papers nor made any contact with the Court. Thus, the Commissioner's motion for judgement on the pleadings is deemed unopposed.

1

eligibility for disability benefits.

## DISCUSSION

### Procedural Background

On December 3, 2002, Plaintiff filed an application for disability insurance benefits alleging inability to work as of March 5, 2001. (A.R. 18-21). On June 16, 2003, Plaintiff requested a hearing before an ALJ. Plaintiff contended that, as of March 9, 2001, he had paid into the Social Security system for the necessary twenty quarters to meet the special insured status requirement for disability benefits. (A.R. 28).

On October 20, 2005, Plaintiff's claim for benefits was rejected. The ALJ found that Plaintiff had only nineteen quarters of coverage between 1991 and 2000 and none in 2001, leaving him one quarter short of the prerequisite number of quarters of coverage needed to be eligible for benefits under the Act. (A.R. 14). On December 22, 2005, Plaintiff appealed the ALJ's decision pursuant to 20 C.F.R. § 404.970(a)(2). The ALJ's decision became final when the Appeals Council denied Plaintiff's request on March 29, 2005. (A.R. 2-3).

### Facts and Applicable Regulations

Plaintiff was born on November 5, 1945, and started working in the United States in 1968. (A.R. 24-25). Plaintiff was a limousine driver from 1984 until 2001 and is the owner of a taxicab medallion that he leases to Anu Taxi Management, Inc. (A.R. 50, 60, 106 and 110). In addition to the income from the lease of the medallion, Plaintiff also was a franchisee of Tel-A-Car during relevant periods, the details of which are discussed below.

Around 1995, Plaintiff started to suffer from diabetes and began to work irregularly. (A.R.109). Plaintiff claims that, due to his diabetes, he suffers from cataracts and numbness in both legs and he is unable to drive and, therefore, work. (A.R. 107 and 110).

To be eligible for disability insurance benefits, an applicant must be "insured for disability insurance benefits." 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130, 404.315(a). An applicant's "insured status" generally depends upon the number of "quarters of coverage" that an applicant has acquired over a given period of time. 42 U.S.C. § 423 (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.130-404.133. A "quarter of coverage" refers to any quarter in which the applicant earned certain amounts of wages or self-employment income. 20 C.F.R. §§ 404.101(b), 404.140-404.146. For example, under the 20/40 Rule, an applicant who claims to have become disabled would be entitled to insured status if he had accumulated at least twenty "quarters of coverage" (five years' worth of work) over the course of a forty quarter period (ten years) ending with the quarter in which he became disabled. 20 C.F.R. § 404.130(b).[4]

At the time Plaintiff allegedly became disabled, the ALJ found that Plaintiff had nineteen quarters of coverage, not the required twenty. The issue before this court is whether Plaintiff earned enough self-employment income in the first quarter of 2001 for it to qualify as a covered quarter.

The ALJ denied coverage and found that Plaintiff should not be credited with any quarters of coverage for 2001 because his earnings of $2,173.00 were not for work performed by Plaintiff but rather were income derived from the rental of his medallion. Earnings from merely renting real property are not considered self-employment income and cannot be used to create a covered quarter. *See* 26 U.S.C. § 1402 (a)(1); 20 C.F.R. § 404.1082; *see also*, *Grier v. United States,* 218 F.2d 603 (2d Cir. 1955) (some negative history but not overruled); *Bramlette*

---

[4] As an alternative, an applicant would be eligible for insurance benefits if he had worked at least one covered quarter per year from the age of 22 and ending the year before the disability's onset. *See* 42 U.S.C. § 414(a). Apparently, Plaintiff has some significant gaps in his employment history and is ineligible under that method of computation.

*Building Corp., v. Commissioner,* 52 T.C. 200, 204-205 (1969) (holding that payments for occupancy of private residences, apartments, offices are generally rents and not trade or business income unless significant services are rendered). However, Plaintiff contends that (1) the rental income does count as self-employment income and (2) even if it is not self-employment income, the income of $2,173.00 that he realized as a franchisee of Tel-A-Car in 2001 is self-employment income and therefore he has at least one covered quarter. (A.R. 95).

The case is remanded to the ALJ because the ALJ made an error of law in finding that the income from rental of the taxi medallion was not self-employment income.[5] Additionally, the ALJ also did not give credit to the testimony of Plaintiff and his wife, Ms. Bernelle Kum, regarding Plaintiff's work as a franchisee for Tel-A-Car and the personal expenses that may have contributed to Plaintiff having no net income in 2001.

**Discussion**

*Standard of Review*

In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner]'s regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health and Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982) (citation and internal quotation marks omitted). The latter determination requires the court to inquire whether the decision is

---

[5] In its Memorandum of Law in Support of Judgment in the Pleadings, the Commissioner concedes that the ALJ erred in not counting the $2,173.00 from Tel-A-Car as earnings from the Plaintiff's franchise. However, the Commissioner maintains that Plaintiff had no covered quarters during 2001 because any earnings were off-set by expenses and Plaintiff still failed to realize any income.

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The reviewing court is required to examine the entire record to determine whether the findings are supported by substantial evidence, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). In determining whether the ALJ's determination is supported by substantial evidence, the court "'must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including, any contradictory evidence and evidence from which conflicting inferences may be drawn.'" *Beckles v. Barnhart*, 340 F. Supp. 2d 285, 287 (E.D.N.Y. 2004) (quoting *Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991)). The court also must "keep[ ] in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998). Indeed, in evaluating the evidence, "the court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

After its review, the district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate where "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have

5

correctly applied the regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (collecting Second Circuit cases).

*Rental Income for the Lease of the Medallion May Constitute Covered Wages*

The term "self-employment income" for social security purposes means the net earnings from self-employment derived by an individual (other than a nonresident alien) from a trade or business carried on by him as a sole proprietor or by a partnership of which he is a member, during any taxable year beginning after 1950. *See* 42 U.S.C. § 411(b), I.R.C. § 1401. The Act carves out some exclusions from the calculation of self-employment income. Income received as a result of rentals of *real estate* are specifically excluded from self-employment income. 42 U.S.C. § 411(a)(1). The same is true for dividends from shares of stock. 42 U.S.C. § 411(a)(2). However, income received from the lease of a taxi medallion is *not* specifically excluded. *See Lee v. Apfel,* 99 CV 2930, 2000 WL 356411 (E.D.N.Y. Apr. 3, 2000). Thus, if Plaintiff was engaged in the "trade or business" of renting his taxi medallion, the ALJ was incorrect, as a matter of law, in failing to credit Plaintiff for $12,690 in self-employment income from the rental of his taxi medallion during 2001. Because the ALJ's determination rests on an issue of law – that rental income does not count as covered self-employment income – the court can review the issue *de novo*. *Keefe on Behalf of Keefe v. Shalala*, 71 F.3d 1060 (2d Cir. 1995) (holding that Court of Appeals must uphold findings of fact but reviews conclusions of law are *de novo*).

The term "trade or business" under the Act has the same meaning as when used in Section 162 of the Internal Revenue Code relating to income taxes. 26 U.S.C. §§ 1402(c), *et seq*.; 42 U.S.C. §411(c); *Grosswald v. Schweiker*, 653 F.2d 58, 59 (2d Cir. 1981). In the Internal Revenue Code, the term "trade business" is not specifically defined, and courts are instructed to

make a case by case evaluation of whether a taxpayer is involved in a trade or business. *See Higgins v. Commissioner*, 312 U.S. 212, 217, 61 S.Ct. 475 (1941). The courts, as well as the Internal Revenue Service, primarily have looked to four factors to determine whether a taxpayer is carrying on a trade or business. Those factors are (1) good faith intention of making a profit or producing income; (2) extensive activity over a substantial period of time; (3) whether the activity has actually begun; and (4) whether the taxpayer holds himself out to others as engaged in the selling of goods and services. *See* F. Ladson Boyle, *What is a Trade or Business*, 39 Tax Law. 737 (1986).

Here, Plaintiff may have held himself as engaged in the transportation business. (A.R. 46). Specifically, Plaintiff was involved in the business of driving his limousine and leasing his taxi medallion for the purpose of making a profit. Plaintiff performed his transportation activities in good faith for 17 years and, during that time, Plaintiff was allowed to deduct all the ordinary and necessary expenses related to his rental business from his income tax returns. (A.R. 50, 92). Plaintiff's dealings with Anu Taxi Management required continuous and repeated transactions and negotiations on the payment of licensing fees, leasing of the medallion, and collection of the leasing rates. The ALJ committed legal error by failing to determine whether, as a matter of law, Plaintiff's income from leasing his taxi medallion qualified as self-employment income under the Act and, therefore, constituted covered earnings. The case is referred back to the ALJ to make this determination.

*Commissioner's Finding that Plaintiff did not Receive Self-Employment Income in 2001 is not Supported by Substantial Evidence*

Even assuming, *arguendo,* that the Plaintiff did not engage in a trade or business by renting out his medallion, Plaintiff may have received earnings from self-employment for the services that he provided as a franchisee of Tel-A-Car during the first quarter of 2001. (A.R. 3). Self-employment income is defined as the net earnings of $400 or more derived by an individual (other than a non-resident alien) from a trade, business or profession carried on by him as a sole proprietor or independent contractor or by a partnership of which he is a member. *See*, Treas. Reg. § 1.1402 (c)-3, P 14,022.20. The ALJ denied Plaintiff's benefits after finding that Plaintiff did not have any self-employment income during the first quarter of 2001 as Plaintiff reported a net loss on his tax return after deducting business expenses. This finding, however, is not supported by substantial evidence.

The term "net earnings from self-employment" means the gross income, as figured under Subtitle A of the Internal Revenue Code, from any trade or business an individual carried on, less deductions attributed to this individual trade or business that are allowed by that Subtitle. 20 C.F.R. § 404.1080. The ALJ's finding that there was no net income is incorrect because the ALJ took into account some deductions that were not directly attributable to Plaintiff's business and thereby exaggerated Plaintiff's losses.

At the hearing, Plaintiff and his wife, Ms. Bernelle Kum, testified that the amount of $2,173.00 was paid to Plaintiff by Tel-A-Car for services that Plaintiff provided as a limousine driver until March 5, 2001. (A.R. 116). Plaintiff had expenses associated with being a driver. However, the testimony indicates that not all of the expenses were business expenses. Plaintiff used the car for personal as well as business purposes. (A.R. 117). Thus, not all the expenses

were properly deductible. Therefore, the Commissioner's finding that Plaintiff did not receive self-employment income because he reported a loss in his 2001 income tax return is not supported by substantial evidence. On remand, the ALJ should review whether, after eliminating deductions for non-business expenses, there was enough self-employment income to create at least one quarter of coverage for 2001. On remand, the ALJ should also determine whether Plaintiff is permitted to amend his earning statements, pursuant to 42 U.S.C. § 405(c)(5), to reflect net self-employment income for the first quarter of 2001.

## CONCLUSION

The Social Security Act is a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion. *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). Consistent with that view, "courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application." *Id.*

Accordingly, defendant's motion for judgment on the pleadings is denied, and this matter is remanded to the Commissioner for further evidentiary proceedings consistent with this Memorandum and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g). To prevent delay in the processing of plaintiff's case, further proceedings before the ALJ must be completed within sixty days of the issuance of the order, i.e. by November 27, 2007. If Plaintiff's benefits remain denied, the Commissioner is directed to render a final decision within sixty days of Plaintiff's appeal, if any. *See Butts v. Barnhart*, 388 F.3d 377, 388 (2d Cir. 2004) (suggesting procedure and time limits to ensure speedy disposition of Social Security cases following remand by a district court). "[I]f these deadlines are not observed, a calculation of benefits owed [to plaintiff, Keith V. Kum] must be made immediately." *Id.*

SO ORDERED.

DATED:   Brooklyn, New York
         September 28, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge